We have a number of cases on the calendar today, but we're going to do it in two tranches. So the first case is Jones v. Quiros. After this argument, we'll take a short recess, and then the A team will come back. So I won't be for the next one, but you'll be in good hands. So, Mr. Buchok, am I pronouncing that right? Yes, Your Honor. So, Mr. Buchok, you have reserved two minutes for rebuttal. So that gives you eight minutes out of the gate. And if everybody's ready, you may proceed. Good morning, Your Honors, and may it please the Court. Nathan Buchok on behalf of the respondent appellant, Angel Quiros. A federal court cannot grant habeas relief simply because it believes that the state court erred. Even clear error will not suffice. Rather, a petitioner must demonstrate that the state court unreasonably applied Supreme Court precedent resulting in an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. The petitioner failed to meet that burden in this case, and the district court failed to apply the deference mandated by AEDPA. As to the petitioner's Strickland claim, the petitioner's trial counsel, Leo Ahern, made a reasonable strategic decision not to present testimony from Sheila McCrag. You can't be serious making that assertion to this court or to me. I am, Your Honor. I believe that that—  Let me have you continue. Go ahead. Well, I think there's been no—there's no suggestion that Attorney Ahern was unaware of what Sheila McCrag told the police. He didn't know what she would say. Well, I think that Attorney Ahern testified that he didn't recall whether he had interviewed her. He initially said— I'm sorry? Attorney Ahern testified that he did not recall whether he interviewed her. He later suggested that he had not. She was an eye—a disinterested eyewitness, and he didn't—couldn't remember whether he had interviewed her. The record shows that she wasn't interviewed. Well, she—he was testifying 14 years after the fact without the benefit of his notes, and while McCrag testified that no one spoke to her, either at the first habeas or at the criminal trial, first habeas counsel testified that his investigator was trying to get a hold of her, and she was successfully ducking him. But while McCrag testified that she saw two shooters, her failure to see a third shooter could have been easily explained by her vantage point and her limited opportunity to view— I mean, that's red meat for any kind of defense counsel worth half his or hers parts. Right, and Ahern made the reasonable strategic decision to make exactly that argument, to argue that the State failed to call any independent eyewitnesses. Had he called McCrag, there was certainly a possibility— How would it have been different if she had been on the stand and just simply said what she saw? I mean, would—are you suggesting to me that a reasonable juror would have bought the cooperator's testimony in light of that testimony? I mean, it's—I guess it's possible, but it seems to me to be entirely implausible. I think a reasonable juror certainly could have concluded that McCrag simply failed to see a third shooter, given that McCrag was standing 20 feet inside the hospital. She would have had to have looked 20 feet through the hospital lobby, through the hospital windows, past the pillars, past the other two shooters, past Harp's car, four more car lengths across the street. Well, she didn't see a shooter. You know that, but defense counsel didn't know that because he didn't talk to the woman. He knew—he knew what she saw from her statements, and—I'm sorry. Well, I was going to say, there were statements to the police that were made available to Ahern, correct? Correct, and Ahern reviewed those statements. He engaged an investigator who reviewed those statements and analyzed them. I think it was entirely reasonable that—to be concerned that a jury would conclude that McCrag simply didn't see the third shooter. She wasn't even sure that she saw a shooting. She had a very limited opportunity to do that, and portions of McCrag's testimony about the location and movement of the two shooters that she did see was consistent with the cooperating witness, Spears. So then you would have a situation if— You know that, but he didn't know that because he didn't talk to her, and the reason he gave for not talking to her was that he didn't know that there were public offender funds for a state-paid investigator. I respect that, Your Honor. I don't think that that is the reason that he gave for not speaking to her. He said that— What was the reason he gave? Well, again, he didn't recall since it was 14 years after the fact when he was testifying, but he suggested that—he recalled that she didn't give—she gave descriptions that didn't necessarily leave Jones out of the picture, and he was concerned that calling a witness—that there was a possibility that her testimony could be harmful. So instead of risking— So do you think that not—would you concede that not interviewing this woman, who was purportedly an eyewitness to the incident, was a departure? I don't concede that. I don't—I'm not even—I'm not even sure I would concede that the record conclusively establishes that he failed to make any effort to speak to her, but, again, the question is not whether what I would—sorry. I understand the difference. I'm just trying to inject a little reality into your presentation. But she's not an eyewitness to anything other than two men running from a scene, correct? That's exactly right. She's an eyewitness. She can see the gunshot. She doesn't claim to have seen the gunshot. She has never claimed to have seen people with guns or seen guns being fired, right? Initially, in the arrest warrant affidavit, it suggested that she had said she had seen guns. When she testifies, she made clear that she saw individuals briefly before the shooting, heard gunshots duck down, and stood back up and saw them running away and never saw guns or the actual shooting. So when the State rests, having called only Spears as a witness, I think it is entirely reasonable for Attorney Ahearn to decide not to call McRae and take the risk that her testimony could be seen as corroborating. Isn't part of when we're trying to assess whether or not there's been deficient performance from— you're talking a lot about, well, it could be a reasonable strategy for this, that, and the other, without the investigation, without having actually spoken with her. I mean, you mentioned the fact that he's aware of, Ahearn, the attorney's aware of her initial statements to the police. But this idea about, like, well, what she might testify to might be damaging. How does he know that if he doesn't speak with her? There's never been any allegation in this case in the district court, in the state court, or any evidence to support that Ahearn would have learned anything differently than what he already knew from the police statements had he met with McRae. The entirety of the petition— Right, but he might have actually learned that— That is an absolutely preposterous assertion. Respectfully, Your Honor, I don't believe that it is, given that the evidence that was ultimately introduced from McRae was simply that she would have testified consistent with her statements. The entire reasoning of the district court is that Ahearn should have presented testimony from McRae to testify to what was in her witness statements. There's no evidence that he would have learned anything differently than what was in those statements. Maybe we should get to the prejudice prong, because even assuming that McRae would have testified as she did in 2015, the state court concluded that even that would not have resulted in a different result. That's correct, Your Honor, and the state court based that determination in part on its conclusion that McRae was an unreliable witness and that her testimony was highly questionable. Only the state court observed McRae testify, observed her demeanor— Let me ask you, when the state court—so this is the second habeas in 2015, and the judge says that the court finds that her testimony at that hearing is not reliable. I'm not sure how that relates, though, to what her testimony would have been at the time of trial in 1992, where you mentioned earlier there was no reason to think that she would testify inconsistent with the statements she gave at the time. And so I'm not sure what the connection is between the reliability of the 2015 statement, where the court talks about, like, it's farther and, you know, it's long ago, and it's questionable that she remembers these details, but if, in fact, her testimony at the time of trial is consistent with the written statements that she's given, are those not reliable, and is that not harmful, the counsel not having those? Well, two things. I don't think that her testimony in 2015 was consistent with her statements. There's a number of inconsistencies that we've highlighted in her briefs. The only thing the district court found that she was consistent about is that she had seen two shooters. That is not clear and convincing evidence under Ed, but to disregard the state habeas course determination that she was not credible. Right, but if she's not, if she's credible as to, if the state court did not find her, I'm not saying this with negatives, but if her testimony in 2015 in 1992 or three, if they're consistent as to this two-shooter aspect of what she's saying, I mean, that was a pretty significant part of the prosecution's case, wasn't it? And that is actually one of the things that we do know was part of Ahern's trial strategy to show that there were only two shooters. Yes, but I think that the fact that she only saw two shooters, again, could have easily been explained by her vantage point, so I don't think that that is as significant. I also, part of what the judge has to do is ascertain the impact of what her testimony would be, and part of that inquiry is to determine whether she's a reliable witness, whether her testimony would be persuasive, and the habeas court concluded that she was not a reliable witness. And I will note that the habeas court stated that the inconsistencies in her testimony underscored its conclusion that she was not a reliable witness, which I think supports that that reliability determination was based on an observation of her demeanor. But under AEDPA, there has to be clear and convincing evidence to demonstrate that that reliability determination was incorrect. Your Honor, I do see that over time the courts indulge us if I could just touch upon the due process. Yeah, I did want to ask about that. So I guess the first question I had is why isn't it procedurally barred? I mean, that was the subject of his direct appeal, wasn't it? It was the subject of his direct appeal, and he- And it was rejected, and the conviction was affirmed, right? That's correct. I don't think that procedural bar was asserted as a defense below, which I think would have, and it was addressed substantively. But the state appellate court here concluded that his due process rights were not violated by the exclusion of a single cumulative hearsay statement that the court deemed was untrustworthy. That is not the kind of restriction on a right to present a defense that has been found to be a due process violation. Here, he was permitted. This wasn't a mechanical application or exclusion. It was a reasoned decision based on the trustworthiness, and he was allowed to introduce other hearsay statements conveying essentially the same thing, that Pepper and Spears had told other Red Line members that they were involved in the shooting, but they had just- Why were those others admitted and the third one not? I guess it wasn't clear to me why the other two would be deemed statements against penal interest and this one wouldn't be. Because there was a question about, well, the state didn't object to the others. That's what I thought. So that's really the issue. Well, there was also an additional concern about the trustworthiness of this statement because Lee Bember had given a statement to police at the time of the shooting where he indicated only that Spears had implicated only himself. So Pepper told him, your boys T.Y. did it and did not implicate himself. Then at trial, Bember testifies, no, Pepper said that both he and Spears did this. At trial outside of the presence of the jury. Correct, the proffer outside of the presence of the jury. So that was a legitimate concern about the trustworthiness of that statement that the court took into account. Thank you. All right. Thanks very much. You've reserved two minutes for rebuttal. Mr. Kuchok will now hear from Mr. Chabot. Chabot. Chabot. Chabot, okay. Your Honor, the state concedes, and may it please the Court, the state agrees that Sheila McRae was consistent in every statement about seeing only two shooters. She was the key witness. I didn't say she was the key witness. The key witness was Spears, right? The key witness for the defense. Well, the key witness, I mean, I thought alibi was the primary defense. Ahon's testimony is clear that he pursues two lines of defense. One is showing that there was only two shooters, not three, and one is putting on the alibi witness. To prove that there was two shooters, he had handed to him a witness who he knew was there and saw the events and would testify consistently in every situation. Let's be clear. So you're saying that she would have testified that she saw the shooting? Her testimony is very clear in 2015. So are you relying on the 2015 testimony? Every statement she gives in 1992 and what she says in 2015 is very clear and consistent about what she saw, which is she's walking through the hotel lobby. She looks out the all-glass windows. She sees two people in the street, and she hears gunshots, and she understandably ducks down, comes up, and sees those same two people running across the street. She only says she doesn't see guns in their hands. She's not watching the firing happen, but she saw the shooting itself. She saw the event. She saw two people, heard shots, and then saw two people run. That's exactly right, Your Honor. She sees two people. She hears shots. She ducks, and she sees those two people running away. There's no contention that there was two other people in the street. The only way to explain what she saw is that there were two people there, and they were shooting. If there had been any concerns from Attorney Ahon about what she might have said, maybe she would have said, I couldn't see across the street. Maybe she would have said she saw three people. That is why he had to interview her and ask her those questions. It is completely inexcusable to not try to resolve those ambiguities if there were, in fact, any ambiguities. I mean, every single thing, every single reason the State comes up with after the fact and in this appeal for why you might think that maybe Sheila McRae wouldn't have been a perfect witness would have been resolved with a simple interview of her, and that is what makes this just an obvious Strickland violation. It is perfectly clear. Strickland says that decisions made after less than complete investigations are reasonable only to the extent that the decision not to investigate is reasonable, and Ahern has no justification, none in the record, for why he didn't investigate. There is none discernible to the Court. So I think it is the clearest possible Strickland violation, and the Court should affirm the very extensive opinion below for that reason alone. Because he should have done a fuller investigation. That alone is enough to grant the Strickland violation? It is enough to grant the Strickland violation to conclude that it was unreasonable performance that prejudiced Mr. Jones not to interview and, therefore, not to call Ms. McRae. But don't you have to do a little more for prejudice than that? We have to show that there was a reasonable chance that the proceedings would have been different had Ms. McRae testified. So had she testified consistent with how she testified in 2015? If she had testified consistent with how she testified in 2015, which is consistent with every written statement on the key facts of the shooting from 1992, she would have gotten up there and said, I saw only two people and neither of them was Malik Jones. That is more than enough to show that there is a reasonable probability that reasonable doubt would have been injected into the proceedings. Really? What's your best case for that proposition? This case says that someone with a partial view who doesn't identify the defendant is, by law, someone who would have to be called or it's ineffective assistance. I don't think that you have to go quite so far as that, Your Honor. I think that's what you just did, though. So that's what I'm trying to figure out. Like, where is the line to be drawn? So on the facts of this case, all these cases are very fact-specific. We point to the Seventh Circuit's decision in Campbell v. Reardon. It's factually opposite to this one. This Court's decision in Pavel deals with several issues, but this is one of them, the similar failure to call and interview a witness. Both of those cases show that you have to at least figure out what the witness is going to say before you can make a reasonable decision not to call them. On the prejudice prong, you have a disinterested eyewitness who saw the shooting who would get up there and say, I saw two people, and neither of them was Malik Jones. Well, she's not exactly disinterested, is she? She does. I agree with you, Your Honor. Let me correct that. She has an interest in bringing her friend Harp's killer to justice. If anyone had an interest in making sure that the right person was convicted for it, it would be her. So that makes her all the more credible. She's a nurse at the hospital who just happened to be there. I mean, it could cut the other way, too, couldn't it? I mean, in fact, that's what her testimony in 2015 included, that she was getting pressure to implicate Jones at the direction of Harp's family. And she says that she would have testified. No, I know that. I'm just saying that it's not a foregone conclusion that she would be a pro-defense witness. If there was any question about how she would testify, that underscores the need to do the investigation. She says in 2015 that she would absolutely have testified, absolutely have told the jury she would testify the same way. But the investigation, I mean, I guess that's what I'm trying to understand. The lawyer understood from the police reports basically what she was going to say. And you're saying that that's consistent with what she ultimately said in 2015, right? That's right, Your Honor. So what more investigation would have been necessary? Ahon was deficient for not calling her. That's really your argument. It's not the investigation because he knew what she was going to say. Two shooters, didn't see a third. So then the question is, is it ineffective assistance not to call a witness who says, I saw two shooters and didn't see the defendant? I saw two guys running away from the scene. This is an easier case because he failed to investigate and failed to call her. The State tries to support the failure to call. What was the first part he failed to? He failed to investigate and failed to call. But the investigation I thought you just said was consistent with what he already had in the police report. What evidence he had, and we cite several cases that are along these same paths, where the counsel knows enough to know what somebody would say. Right. And what they need to do to make an educated decision about whether to call them or not call them is talk to the person, interview the person. If there was something on the face of the reports, that would be one thing. But he needs to figure out, am I going to call her or not? And in this appeal, the State has come up with lots of very smart reasons, apt to facts, why maybe you could be worried about calling this person. All of them would have been resolved by an investigation. So there is no excuse on the record for the failure to investigate at all, failure to speak to this critical witness who formed the basis of the arrest warrant, who the State You just, this seems to be a process argument. I mean, I'm really trying to get you to focus on the prejudice. And so he knew through the police reports that she would testify that she saw two people, neither of whom was the defendant. And so he should have called her, is your point. He's prejudiced by the failure to call. If Mr. Ahern Right. So let's talk about that. Had he called her, you're saying that McRae would have testified consistent with the way she testified in 2015. Yes. She said so in 2015, that she would testify the same way. Right. And so he is prejudiced by the failure to have her testimony at trial. And the reason why Ahern does not call her because he never investigates. He never finds out what she would say. He never resolves any of these. But so assume that she testified as she did in 2015. I guess the issue is that that would have exculpated Jones. That would have contradicted the testimony of Spears. It contradicted. Why? It contradicted the testimony of Spears, who said there was three people. She says, I saw two people. Is that a contradiction because she didn't see the third? There wasn't a third? That's exactly right. Because she's asked in 2015, could you see across the street? Could you see in the corner of Chapel and Dears? And she said, yes, I could. If there was someone standing there, which was Spears' testimony, she would have been able to see them. She says exactly that in 2015. And more importantly, your position is he didn't know what else she would say because he didn't ask her any questions. Exactly right, Your Honor. Well, we're on the prejudice problem now, so I'm trying to figure out, like, why the result would have been different had the jury heard that this witness didn't see a third person. If this witness had said, I saw two people, neither of them was Malik Jones, I could see on the corner where they say someone else was standing and I didn't see anyone there, I think that is more than sufficient to show a reasonable probability that there would have been reasonable doubt in the proceedings. There's not a prejudice from the mere failure to investigate at all. If he had investigated and Ms. McCrae had told him in their conversation, oh, no, I saw three people, and actually one of them was Malik Jones, this would be a very different case. But he did not do the investigation to find out what she was talking about, and that is very clear under Strickland. Strickland squarely says you don't defer to decisions of counsel that are made off deficient investigations unless the decision not to investigate was sufficient. And it wasn't here. There's no excuse for it in the record at all. Thank you. No, no, I want to hear about the other argument, the Bember testimony. So that was raised on direct appeal. Raised on direct appeal. Rejected. Rejected on direct appeal. And how does it work in Connecticut? You get to just keep raising these things again and again? No, it's exhausted on direct appeal, and the state court, I don't think the state disputes that we sufficiently exhausted it. The district court goes through the analysis and determines that it was sufficiently exhausted in the direct appeal, and then it engages in the exact framework that this court set out in Scrimo to determine whether or not an error of state law arises to the level of a constitutional violation. Step one of that analysis is — But don't you have — I mean, don't you have to do that sooner? You get to wait 15 years or 20 years to do that? Your Honor, the district court goes through this analysis and concludes that it is exhausted. The state has never contested that this is not sufficiently exhausted or procedurally barred. They meet us here on the merits, and I think even if there were a claim that there's a procedural bar exhaustion, it's been affirmatively waived by the State at this point in the proceedings. And so the — just — I mean, the State — the second habeas court concluded, among other things, that this would have been cumulative, right? So it's the direct appeal court that says that this is cumulative. Right. But then — Go ahead. So on the question of the due process violation, the Court just says in a sentence, based on our view of the record, we conclude that it was not a due process violation to exclude a statement that was untrustworthy. The reason why that is an unreasonable application of clearly established Federal law is because the Court analyzed the wrong statement. There is two statements. There's Pepper's statement to Bember. There's Bember's statement to Trocchio. It is unreasonable for the Court to exclude Statement A by an analysis on Statement B. And that's exactly what the district court concludes here. But that is why the application of State law here is a remnant. And that is why it arises to the — it satisfies 2254D. But why would it not be cumulative if there's two other witnesses who basically said the same thing? It's not cumulative, Your Honor, because it's not the same statement. So it is true that weeks later, Pepper also says to Ms. Bember, Ernestine Bember, that it was he and Spears who did the shooting. This statement comes hours after the shooting. It is a direct statement from Pepper. It's from someone who he trusted, a close friend, in response to a confrontation on the street. It's not cumulative for there to be multiple confessions by one person. That just makes each confession stronger. It's not as though Mr. Bember and Ms. Bember were in the same room, and Pepper said to them both, hey, Spears and I killed someone last night. That would be cumulative. You don't need two people to testify to one statement. But the repeat, consistent, over time statements, including the one that is closest to the shooting, including the one that happens first to a close confederate, in response to getting confronted on the street and running upstairs to get armed, that is a powerful, powerful fact that Mr. Jones' right to present a complete defense was inhibited by not being able to present. If Ahern had been able to put this on, this would have been the centerpiece of the case. It would have said, in the hours after the shooting. This would have been the centerpiece of the case? Yes, Your Honor. In the hours after the shooting, one of the uncontested shooters talked to his friend and said it was me and this other guy. That is strong, strong proof of the two-shooter theory that Ahern was putting on, and it would have made every other piece of evidence that came out of this fact all the stronger. We have a much weaker case because of this. Perhaps I'm getting the content of some of these statements confused. But the other two statements, aren't they arguably more relevant, given that I think those other two witnesses were specifically asked about if Jones was present versus this statement doesn't, you know, the other one said, hey, where was Jones, or was Jones there, and they say, you know, no, he wasn't, versus the statement from Bember isn't, there's no, he's not directed in any way or no one's asked about Jones. I mean, I understand he does say that Pepper just says me, you know, Spears just says me and Pepper, but arguably those other two statements, there's a better argument of prejudice from those statements than from this one. Your Honor, I don't think so because of how close in time this statement is. It is true that when Bember is asked on the stand outside the presence of the jury, you know, did he say specifically Malik Jones wasn't there, Bember says no, Malik just never came up. That's true. And in the other statements, they're asked on the stand because they're allowed to testify in front of the jury. Well, you know, did he say specifically that Malik Jones wasn't there, and they say no. But I think when you look at the total circumstances here about the facts of this particular statement, it shows why this statement would have made all the others much more powerful. I mean, there's a big difference between someone saying to, you know, the boss of the drug game, three weeks later, a month later by Thanksgiving, after this happened in mid-October, that yes, it was us and it was a robbery went wrong. There's lots of reasons to sort of question that statement. This statement in the heat of the moment, eight hours after the murder, there's no time to concoct a story. There's no question of the truthfulness here. I think that this really would have been the heartland of the defense case had it been able to come up. Well, I mean, the defense case was an alibi. Wasn't that the principal defense? Well, there were two, Your Honor. He tried to put on the alibi witness. There's one alibi witness, Tevlin Spears. Right. And then there's two other witnesses who are only able to say, you know, weeks later, Spears just told me it was him and didn't mention Jones. And Aaron Steenbemberg is able to say, you know, four to six weeks later, Pepper told me it was him and Spears. But, I mean, there's also evidence of Jones' letters to Spears telling him not to cooperate, floating his alibi theory, asking Spears to basically take responsibility for the shooting. I mean, those are all things that go on the scale as we assess prejudice, right? Those are all things that go on the scale as you assess prejudice. We address the letters, which I don't think our family read to say that he's trying to convince Spears to lie on the stand. He's trying to convince him to tell the truth. Take responsibility because you did it. But we do account that for prejudice, but it all comes back to the fact that the state's case, the state courts all agree on this, was a single witness case, Spears, one of the shooters who had every motivation in the world to lie. It's not a strong case. And so when you think, and the Supreme Court's case law is very clear on this and the Chamber's violation, when it is an overall weaker case for the state, even a small additional modicum of evidence can tip the balance in reasonable depth. And I think that if you look at the Spears, the Pepper statement, if that had come in and framed the rest of the evidence, it would have been sufficient to introduce reasonable depth. And so excluding it deprived Mr. Jones of his right to a complete defense. But the jury obviously rejected the alibi defense, right? The jury rejected the alibi defense. So notwithstanding the weakness of the state's case and the fact that there's a witness who's giving him an alibi, the jury didn't buy it. That's right. But they would have. Well, go ahead. I apologize, Your Honor. No, that's okay. It makes the constitutional violations, the two constitutional violations, all the more dramatic that the exclusion of the statement by Bember deprived him of his right to a complete defense, a defense that was that much more critical because the jury rejected the alibi witness. And Ahern's decision up front to not even try to contact Ms. McCrae, determine what she would testify to, and then call her, again, makes it all that much more deficient because he had decided on a strategy. One was to shake the alibi that the jury rejected, and one was the two-shooter theory. He had a witness, the key witness, who would have supported the two-shooter theory, and he did nothing. He never tried to talk to her. He never spoke to her. He never inquired as to what she was saying. We get that. Thank you. Thank you very much. Mr. Buchok, you have two minutes for rebuttal. Thank you, Your Honor. Briefly on the chamber's issue, the jury heard testimony from two redline members claiming that Pepper and Spears had admitted being involved in the murder and not mentioned Jones. Tyrese White testified that he asked Spears whether Jones was there, and he said he didn't know. Or he asked where Jones was, excuse me, and he said he didn't know. So the jury would not have been in reasonable doubt had they heard from one more redline member who came in and gave that same kind of testimony, particularly because Lee Bember's testimony would have given the State ample fodder for cross-examination since his story changed over time. In your view, Counsel, was the State's case at trial strong or weak? I don't think the State's case was weak. I acknowledge that Spears was the only witness that they called, but I think you have Spears. Was it a strong case to you? I think it was a strong enough case, Your Honor. I acknowledge that there was the one cooperating witness, but he gave very detailed testimony, as the State habeas court found. I mean, that's par for the course. You also have powerful motive evidence here. There's no question that Harp was killed over a beef that was essentially a personal beef with Jones and Harp's best friend. You also have Jones admitting that he's in the neighborhood with Pepper and Spears moments before the shooting, but claims that he went up to a house instead of the woman. Was Counsel's failure to interview the woman deficient performance? I don't think that Counsel's failure to interview the woman is deficient performance. This Court has never found a failure to investigate was deficient performance, absent evidence that Counsel would have learned something additional that he did not already know had he interviewed him. And you think there was no such possibility in this case? There's no allegation in this case that that would have occurred and no evidence in this case that that would have occurred. As to McCrae's testimony in 2015 about what she saw on the corner where Spears was standing, it was far from conclusive. She was asked, did you see anyone standing there? She said, not to my knowledge, but it happened so quick. So even in 2015, she's acknowledging a limited opportunity to view the events here and is far from certain that no one else was on that corner. So when the State rests having called only Spears as the eyewitness to the shooting, it was reasonable for her not to call McCrae and run the risk that the jury could see her testimony as corroborating Spears and instead argue— She didn't know. He didn't know. He didn't talk to her. He didn't know what she was in a position to say. He knew from her statements that she would have said that there were two shooters. She knew what she told the cops, but he didn't interview her. He didn't know what she knew. But she told the police that there were two shooters within the hospital parking lot area near where Spears said that Jones and Pepper were standing and that those two shooters after the— The point of an interview is there may be something else there. But there is no—there was no evidence that there's anything else there. You don't know that. We know from her 2015 testimony. Correct. That's correct. We know from her 2015 testimony when she comes in and says what she would say, but there's not—she doesn't say anything different or she— There's nothing in— Nothing additional that's helpful. —that is more exculpatory than what she would have—what was in the police report. Correct, Your Honor, and correct. And the other thing here is that by not calling McCrae, Ahearn has the ability to seek a missing witness charge, which based on this record I think he had, it was reasonable for him to try to pursue that. If he obtained that missing witness charge, the court would have instructed the jury to— What do you mean the ability to seek a missing witness charge? Under Connecticut law at the time where the state doesn't call someone who is available and who would have given—the test is set out in our briefs, but essentially someone that the state would have naturally be—have called, you could have got a missing witness charge where the court would have instructed the jury to say, you can assume that everything this witness would have said would not have been favorable to the state. So that—and based on this record, I think he had a reasonable decision to try to seek that charge, and I don't think it was unreasonable under Strickland for him to choose that— Well, the point being that that would be better than her actual testimony. Yes, I think so because there's no risk there that some of her testimony is construed as corroborating Spears' testimony. I certainly think under Strickland it's not unreasonable for Ahearn to make that decision, and under AEDPA it is not an error beyond any possibility for fair-minded disagreement for the state court to conclude that that was not a violation of Strickland. Unless the court has any other questions. Thank you. No. All right, well, thank you both. We will reserve decision. We're now going to take a short break. Thank you both. Very interesting case. Well argued. Gave you a hard time, but that's our job. And Will McCudley, you took this case on—this is a pro bono appointment? It is, Your Honor. Thank you, counsel. Thank you, Mr. Schoenfeld, and thank your firm for the job they do. Thank you.